UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Tammy Harrison,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil No. |
| | ) | |
| **Encore Capital Group, Inc.,** | ) | |
| **Midland Credit Management, Inc.,** | ) | |
| **Midland Funding, LLC,** | ) | **JURY TRIAL DEMANDED** |
| **Clarkson Law Firm, LLC, and** | ) | |
| **Wylie Clarkson, an individual,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Tammy Harrison, for actual and statutory damages, attorneys' fees, and costs for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA"), the Telephone Consumer Protection Act, 47 U.S.C. §227, *et seq*. ("TCPA"), and South Carolina common law as set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1692k(d), 28 U.S.C. §1331, §1332 and §1367. Venue is proper in that the Defendants transacted business here, and the Plaintiff resides here.

## PARTIES

3. The Plaintiff, Tammy Harrison, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years and is a consumer as that terms is defined by the FDCPA, 15 U.S.C. §1692a(3).

4. Defendant, Encore Capital Group, Inc. ("Encore") is a Delaware corporation with its principal place of business at 8875 Aero Dr., Suite 200, San Diego, CA 92123. Encore may be served with process through its registered agent for service of process, Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808. In all respects and at all times relevant herein, Encore Capital Group, Inc. (Encore) was doing business in the State of South Carolina. Defendant Encore is engaged in the business of collecting consumer debts from consumers residing in South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

5. Defendant, Midland Credit Management, Inc. ("MCM") is a Kansas corporation with its principal place of business at 8875 Aero Dr., Suite 200, San Diego, CA 92123. MCM may be served with process through its registered agent for service of process, Corporation Service Company, 1703 Laurel St., Columbia, SC 29201 In all respects and at all times relevant herein, Midland Credit Management, Inc. (MCM) was doing business in the State of South Carolina. Defendant MCM is engaged in the business of collecting consumer debts from consumers residing in South Carolina and is a

"debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

6. Defendant, Midland Funding, LLC ("MF"), is a Delaware corporation and may be served with process through its registered agent, Corporation Service Company, 1703 Laurel St., Columbia, SC 29201. In all respects and at all times relevant herein, Defendant has been doing business in the state of South Carolina. Defendant Midland is a debt collector as that term is defined by 15 U.S.C. §1692a(6).

7. Defendant Clarkson Law Firm, LLC (referred to hereinafter as "Clarkson Law") is a South Carolina corporation which may be served with process through its registered agent, Wylie Clarkson, 1300 Pickens St., Columbia, SC 29201. In all respects and at all times relevant herein, Defendant has been doing business in the state of South Carolina. Defendant Clarkson Law is a debt collector as that term is defined by 15 U.S.C. §1692a(6).

8. Defendant Wylie W. Clarkson is a South Carolina attorney who specializes in debt collection and may be sued, by way of restricted delivery, at his office, Clarkson Law Firm, LLC, 1300 Pickens St., Columbia, SC 29201. In all respects and at all times relevant herein, Defendant has been doing business in the state of South Carolina. Defendant Clarkson is a debt collector as that term is defined by 15 U.S.C. §1692a(6).

9. Defendants Encore, MCM, MF, Clarkson Law, and Clarkson each participated in and contributed to the damages caused to the Plaintiff.

10. All acts done by Defendant Encore were done on its own behalf and on the behalf of

MCM, MF, Clarkson Law, and Wylie Clarkson.

11. All acts done by Defendant MCM were done on its own behalf and on the behalf of Encore, MF, Clarkson Law, and Wylie Clarkson.

12. All acts done by Defendant MF were done on its own behalf and on the behalf of Encore, MCM, Clarkson Law, and Wylie Clarkson.

13. All acts done by Defendant Clarkson Law were done on its owns behalf and on the behalf of Encore, MCM, MF, and Wylie Clarkson.

14. All acts done by Defendant Wylie Clarkson were done on his own behalf and on the behalf of Encore, MCM, MF, and Clarkson Law.

15. Defendants Encore, MCM, and MF are collectively referred to hereinafter as "Midland".

16. Defendants Clarkson Law and Wylie Clarkson are collectively referred to hereinafter as "Clarkson".

## FACTUAL ALLEGATIONS

17. In 2014, Midland began attempting to collect an alleged debt from Plaintiff.

18. On or about November 6, 2014, Plaintiff sent correspondence to Midland in which she disputed the debt and requested validation of same, along with a complete account history of the debt and any payments made to the original creditor or to Midland. A copy of said letter is attached hereto as Exhibit "A".

19. Plaintiff did not receive validation from Midland of the debt it was attempting to

collect.

20. On or about December 9, 2014, Clarkson (at the time operating under the name "Clarkson and Korn, LLC") sent correspondence to Plaintiff indicating that it was representing Midland regarding the debt Midland was attempting to collect. Clarkson's letter included language which indicated that Plaintiff had thirty days to dispute the validity of the debt.

21. On or about December 30, 2014, Plaintiff sent Clarkson a letter requesting, for a second time, that Midland provide validation of the debt and a complete account history of all payments made to the original creditor and to Midland on the debt. A copy of said letter is attached hereto as Exhibit "B".

22. Once again, Plaintiff did not receive the requested validation or account history from either Midland or Clarkson.

23. On or about February 9, 2015, in spite of having failed and/or refused to provide validation of the debt it was attempting to collect, Clarkson sent Plaintiff another letter in which Clarkson "urged [Plaintiff] to contact [Clarkson's] office upon receipt of this letter...". In bold, Clarkson stated that it had the authority to settle the debt for less than the balance owed. A copy is attached hereto as Exhibit "C".

24. On or about February 18, 2015,Clarkson filed a collection lawsuit on behalf of Midland against Plaintiff. Said lawsuit sought to collect $5,980.58 and was filed in the Darlington County Court of Common Pleas with case number 15-CP-16-0137. At

the time this lawsuit was filed, neither Midland nor Clarkson had ever provided the requested validation of the debt which was the subject of their collection action.

25. On or about March 26, 2015, after receipt of Defendants' lawsuit, Plaintiff sent a second letter to Clarkson. In this letter, Plaintiff stated that she was in receipt of the lawsuit and that she had still not received validation of the debt. Plaintiff again requested validation of the debt, a complete account history of all payments received by Midland and/or the original creditor, and copies of any checks or money order numbers for any payments made by same. Said letter was sent certified mail. A copy of said letter is attached hereto as Exhibit "D".

26. Plaintiff never received any response to her March 26, 2015 letter.

27. On or about May 8, 2015, Plaintiff received discovery requests from Defendants. Included with said requests were Request for Admissions with statements attached. The statements attached by Defendants indicated that the date of last payment was December 4, 2011. Documentation produced by Plaintiff also indicated that the account Defendants were attempting to collect was charged off in February, 2012.

28. On or about June 10, 2015, Plaintiff sent a fourth letter to Clarkson. Plaintiff stated that she had not received any information from Midland or Clarkson regarding the disputed debt and, therefore, asked that Defendants cease their collection efforts of the debt. A copy of said letter is attached hereto as Exhibit "E".

29. On or about July 17, 2015, Plaintiff sent a fifth letter to Clarkson. Plaintiff stated that,

upon review, she had become aware that the debt which Defendants had sued upon was time-barred by the South Carolina statute of limitations. Plaintiff requested that Defendants not contact her again regarding this debt unless Defendants were notifying her that the collection efforts had been terminated. A copy of said letter is attached hereto as Exhibit "F".

30. On or about August 4, 2015, with full knowledge that the debt was barred by the South Carolina statute of limitations, Defendants filed a Motion for Summary Judgment in the debt collection action.

31. After having exhausted all other means, Plaintiff was forced to retain counsel to defend the debt collection action, including the motion for summary judgment.

32. On or about January 26, 2016, Defendants filed a second affidavit with the Darlington County Circuit Court. Said affidavit was signed by Tanya Johnson on December 30, 2015, and stated under oath that a review of Midland's records showed that a payment was made on June 14, 2012. Although Midland's representative stated under oath that a payment was made to Midland on June 14, 2012, no copy of said payment, or even the screen print, was provided with the affidavit to the Court, nor has it ever been provided to Plaintiff.

33. Despite notice to Defendants that the debt they are seeking to collect is outside of the applicable statute of limitations, Defendants continue to pursue a judgment against Plaintiff.

34. Midland also attempted to collect from Plaintiff by way of telephone calls made to Plaintiff's cellular telephone.

35. Upon information and belief, a number of calls placed to the Plaintiff's cellular telephone by Midland were made through the use of an automatic telephone dialing system as defined by 47 U.S.C. § 227.

36. Midland repeatedly called Plaintiff on numbers that were assigned to a cellular telephone service. Additionally, Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

37. Plaintiff did not expressly consent to Midland's placement of telephone calls to her cellular telephone by the use of an automatic telephone dialing system pursuant to 47 U.S.C. §227(b)(1)(A). Midland knew, or should have known, that it was calling Plaintiff's cellular telephone number without express consent.

38. None of Midland's telephone calls placed to Plaintiff were for emergency purposes as defined by 47 U.S.C. §227 (b)(1)(A)(I).

39. The telephone calls made by Midland were in violation of 47 U.S.C. §227(b)(1).

40. Plaintiff hereby opts out of any class action covering the allegations contained herein, including but not limited to *In re: Midland Credit Management Inc. Telephone Consumer Protection Act Litigation*, in the U.S. District Court for the Southern District of California, Case No. 11-MD-2286 MMA (MDD).

41. Midland has developed a proprietary, system driven collection process based on the

"predictive behavior" of consumers and state courts. In conjunction with its subsidiaries and "franchisee" law firms, Midland engages in computer automated, high volume, state court litigation in the collection of distressed debt.

42. Due to the nature of the purchased distressed debt, the high volumes, and automation, Midland is unable to meet the requirements of the rules of evidence of providing proof of the records of the debt without misleading the state courts and consumer debtors.

43. Instead of providing actual admissible evidence of the proof required in a breach of contract lawsuit, Midland hires employees as "Robo-signers". The Robo-signers sign several hundred affidavits a day falsely claiming that they are a business records custodian with personal knowledge of the facts. They falsely claim in the affidavit knowledge of the assignment(s) of the debt, the amount of the debt, the default date of the debt, the alleged credit card terms and conditions, and the record keeping procedures of every bank in America.

44. It is made to appear to State Court Judges that the debt records filed with the Court were attached to the affidavit by the affiant, but that is not the case. The affidavits are signed in Minnesota by an MCM employee. Then the affidavit is sent to the collection law firm. An employee of the collection law firm then selects and attaches documents to the "business records affidavit" to file with the Court. The Court and the alleged debtor is led to believe that the affiant has authenticated and established

the reliability of the records but the affiant does not even know what records will be later attached to the affidavit.

45.  As part of its collection action Complaint, Clarkson, on behalf of Midland, submitted an affidavit of Lily Haas, an employee of MCM, termed at the bottom of the affidavit, "AFFRECORD". As part of the affidavit, Ms. Haas stated under oath that she was a "Legal Specialist" and had "access to pertinent account records for Midland Credit Management, Inc." She further stated that she made this statement "based upon personal knowledge of those account records maintained on plaintiff's behalf." Additionally, she stated that based upon her personal knowledge, "Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK, N.A. account." She further stated under oath that she had "access to and have reviewed the records pertaining to the account and am authorized to make this affidavit on plaintiff's behalf." She continued stating, "I am familiar with the manner and method by which MCM creates and maintains its business records pertaining to this account." The affidavit was notarized in the State of Minnesota by Danielle R. Smith.

46.  In her affidavit, Haas made false, misleading, unfair and deceptive statements that her statements were "based upon personal knowledge" and that she had personal knowledge of all relevant financial information concerning Harrison's alleged account.

47. Haas did not have personal knowledge of the information in her Affidavit concerning the Plaintiff's alleged account.

48. Haas did not have personal knowledge of all relevant financial information concerning Harrison's alleged account.

49. Haas in her Affidavit made the false, misleading, unfair and deceptive statement that she had personal knowledge that "the account shows that the defendant owed a balance of $5,880.58"

50. Haas' statement that she had personal knowledge that "the account shows that the defendant owed a balance of $5,880.58" was not true, was misleading, unfair and deceptive.

51. Haas in her Affidavit made the false, misleading, unfair and deceptive statement that she had personal knowledge that "Plaintiff is the current owner of, and/or successor to, the obligation sued upon, and was assigned all the rights, title and interest to defendant's CITIBANK, N.A. account."

52. Haas did not, at the time she signed the affidavit, have any personal knowledge of whether Midland Funding LLC's was a successor to Citibank, N.A. and had no knowledge of whether all the rights, title and interest to the account were assigned and/or sold to Midland Funding.

53. Haas did not review any records prior to signing the affidavit.

## COUNT ONE
Fair Debt Collection Practices Act

54. Plaintiff adopts the averments and allegations of paragraphs 17 through 53 hereinbefore as if fully stated herein.

55. Defendants, through their own acts, by and through their agents and employees, and their policies and procedures, have engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff and her alleged consumer debt.

56. The Defendants falsely represented the character, amount, and/or legal status of the alleged debt, violating 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A) and other provisions of the FDCPA. Defendants conduct includes, but is not limited to, the filing of a lawsuit to collect upon a debt that was time-barred by the statute of limitations, continuing to pursue a judgment against Plaintiff on said time-barred debt even after being made known by Plaintiff that the debt was time-barred, and falsely representing the amount due on the debt to the national Credit Reporting Agencies.

57. The Defendants made misleading and deceptive statements in the collection of a debt in violation of 15 U.S.C. § 1692e.

58. The Defendants served on the Plaintiff and filed two affidavits containing false and misleading statements as proof of the existence, amount, and status of an alleged debt in violation of 15 U.S.C. §§ 1692e and 1692f.

59. Defendants violated §1692e(5) by threatening to take action which they could not

legally take. Specifically, Defendants threatened to bring, and ultimately brought, a lawsuit on a debt that was time-barred by the statute of limitations.

60. The Defendants used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f including but not limited to 15 U.S.C. § 1692f(1).

61. The Defendants misrepresented the amount due.

62. The Defendants misrepresented the amount due for principal and failed to disclose that any amounts claimed also included interest and other charges.

63. The attempt to collect or collection of such an amount is neither expressly authorized by an agreement creating the debt nor permitted by law, evidencing that the Defendant is in violation of 15 U.S.C. §1692f, 1692f(1) and other provisions of the FDCPA.

64. Defendants violated §1692g by refusing to provide validation of the debt they were attempting to collect after repeated requests for same by Plaintiff.

65. Defendants violated 15 U.S.C. §1692g(b) by continuing to attempt to collect an alleged debt from Plaintiff before providing validation of the disputed debt. Defendants' conduct includes, but is not limited to, Clarkson continuing to send collection letters to Plaintiff after Plaintiff requested debt validation but before any such validation was provided to Plaintiff by Defendants.

66. The Defendants' violations of the FDCPA have caused actual damages to the Plaintiff, including attorney's fees to defend the collection action. The Plaintiff has

also suffered mental anguish, physical sickness and suffering, embarrassment and humiliation as a result of the Defendant's actions.

## COUNT TWO
Telephone Consumer Protection Act

67. Plaintiff adopts the averments and allegations of paragraphs 17 through 66 hereinbefore as if fully stated herein.

68. The foregoing acts and omissions of Midland constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

69. As a result of Midland's negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C.§ 227(b)(3)(B).

## COUNT THREE
Telephone Consumer Protection Act

70. Plaintiff adopts the averments and allegations of paragraphs 17 through 69 hereinbefore as if fully stated herein.

71. The foregoing acts and omissions of Midland constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

72. As a result of Midland's knowing and/or willful violations of 47 U.S.C. §227 *et seq.*, the Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for

each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(c).

## COUNT FOUR
Abuse of Process

73. The Plaintiff adopts the averments and allegations of paragraphs 17 through 72 hereinbefore as if fully set forth herein.

74. That, upon information and belief, Defendants have improperly used judicial process to seek to coerce and harass the Plaintiff to pay a debt that is time-barred by the statute of limitations.

75. That, upon information and belief, Defendants therefore used this judicial process to gain an objective which is not legitimate, and an ulterior purpose exists.

76. That, upon information and belief, Defendants sought to accomplish this ulterior purpose fraudulently, willfully, wantonly and maliciously by the aforesaid misuse of the judicial system of South Carolina and by filing a motion for summary judgment after being alerted by Plaintiff, who was appearing pro se, that the debt was time-barred by the South Carolina statute of limitations.

77. That as a direct and proximate result of the foregoing, Plaintiff has been injured and damaged, as aforementioned, and she is informed and believes that she is entitled to an award of actual damages from Defendants (including attorney's fees), in addition to an award of punitive damages for Defendants' reckless, willful and wanton disregard of her rights.

## COUNT FIVE
Invasion of Privacy

78. The Plaintiff adopts the averments and allegations of paragraphs 17 through 77 hereinbefore as if fully set forth herein.

79. South Carolina state law recognizes the Plaintiff's right to be free from invasions of privacy in such a manner as to outrage or cause serious mental suffering, shame, and humiliation to Plaintiff.

80. Defendants Midland intentionally intruded upon the Plaintiff's right to privacy by continually harassing the Plaintiff with telephone calls to collect an alleged debt.

81. The telephone calls made by Midland to Plaintiff were so persistent and repeated with such frequency that they were outrageous, caused Plaintiff serious mental suffering and invaded the Plaintiff's privacy.

82. As a result of the intrusions and invasions into Plaintiff's privacy, the Plaintiff is entitled to compensatory damages in an amount to be determined by a struck jury.

83. Additionally, as all of the acts undertaken and performed by Midland and its employees and/or agents were committed with malice, intent, wantonness, and recklessness, the Plaintiff is also entitled to punitive damages from Midland.

## COUNT SIX
Negligent Training and Supervision

84. The Plaintiff adopts the averments and allegations of paragraphs 17 through 83 hereinbefore as if fully set forth herein.

85. Defendants owed Plaintiff a duty to train their employees on both Federal and State law so as to prevent the conduct happened upon Plaintiff.

86. Defendants knew or should have known of their inadequate training and supervision. If Defendants had properly trained and supervised their employees, agents, and assigns, the conduct set forth herein which was directed at and visited upon Plaintiff would not have occurred.

87. Defendants negligently failed to train and supervise their employees, agents, and/or assigns in order to prevent said improper conduct and violations of the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and South Carolina law.

88. As a result of Defendants' negligence, Plaintiff suffered humiliation, stress, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT SEVEN
Reckless and Wanton Training and Supervision

89. The Plaintiff adopts the averments and allegations of paragraphs 17 through 88 hereinbefore as if fully set forth herein.

90. Defendants owed Plaintiff a duty to train their employees on both Federal and State law so as to prevent the conduct happened upon Plaintiff.

91. Defendants knew or should have known of their inadequate training and supervision. If Defendants had properly trained and supervised their employees, agents, and

assigns, the conduct set forth herein which was directed at and visited upon Plaintiff would not have occurred.

92. Defendants knew or should have known that the conduct of their employees, agents, and/or assigns was improper and in violation of the Fair Debt Collection Practices Act, the Telephone Consumer Protection Act, and South Carolina law.

93. Defendants recklessly and wantonly failed to train and supervise their employees, agents, and/or assigns in order to prevent said improper conduct.

94. As a result of Defendants' recklessness and wantonness, Plaintiff suffered humiliation, stress, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands a judgment against the Defendants for the following:

1. Actual damages for Defendants' violations of the FDCPA;

2. Statutory damages of $1,000.00 from each Defendant pursuant to 15 U.S.C. §1692k;

3. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k;

4. Statutory damages of $500.00 from Defendants Encore, MCM and MF for each and every negligent violation of the TCPA;

5. Treble statutory damages of $1,500.00 for each and every call made to the

       Plaintiff's cell phone by Defendants Encore, MCM and MF as each and every call was a knowing and/or willful violation of 47 U.S.C. §227 *et seq.*;

6.    For compensatory and punitive damages for Defendants' abuse of process, invasion of privacy, negligent, reckless, willful and wanton training and supervision;

7.    Attorney's fees for Defendants' abuse of process;

8.    For this matter to be heard by a jury; and

9.    For such other and further relief as this Court deems necessary and proper.

                       /s/ Penny Hays Cauley
                       Penny Hays Cauley, Fed. ID No. 10323
                       Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 W. Evans St.
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

      **PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                       /s/ Penny Hays Cauley
                       Penny Hays Cauley

**DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL**
Encore Capital Group, Inc.
c/o Corporation Service Company - Registered Agent
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

Midland Credit Management, Inc.
c/o Corporation Service Company - Registered Agent
1703 Laurel St.
Columbia, SC 29201

Midland Funding, LLC
c/o Corporation Service Company - Registered Agent
1703 Laurel St.
Columbia, SC 29201

Clarkson Law Firm, LLC
c/o Wylie Clarkson - Registered Agent
1300 Pickens St.
Columbia, SC 29201

(Restricted Delivery)
Wylie Clarkson
Clarkson Law Firm, LLC
1300 Pickens St.
Columbia, SC 29201